# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CALLEN WILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 17-cv-2038 (KBJ) |
| | ) |
| NATIONAL SECURITY AGENCY, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Callen Willis sincerely believes that federal government records might represent her "as having been affiliated with and/or having been under contract with the United States government minimally during 2014 and 2015[.]" (Compl., ECF No. 1, ¶ 3.) To determine whether she has been so misrepresented, in July of 2017, Willis submitted a request to the National Security Agency ("NSA") seeking "personal records under the Privacy Act." (Ex. A. to Decl. of Steven E. Thompson ("Thompson Decl."), ECF No. 11-3 at 18–37 ("PA/FOIA Request"), at 18.)[1] NSA construed Willis's request as one seeking intelligence records on herself under both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, and the agency responded that it was unable to confirm or deny the existence of any responsive records, in accordance with its standard policy for requests seeking intelligence records. (*See* Ex. B. to Thompson Decl., ECF No. 11-3 at 39–41 ("PA/FOIA Resp."), at 39.) NSA also searched its non-intelligence Privacy Act files for records containing Willis's name

---

[1] Page numbers cited herein refer to those that the Court's electronic case-filing system automatically assigns.

and social security number, and its FOIA files for records pertaining to litigation she specified in her request, but the agency did not locate any records. (*See* Thompson Decl. ¶¶ 15–16.) Willis has sued nevertheless, seeking to compel NSA to "make the requested information promptly available to [her][.]" (Compl., Count I, ¶ 11(a).)

Before this Court at present is NSA's motion for summary judgment, in which the agency argues that it properly refused to confirm or deny the existence of any intelligence records regarding Willis and further conducted a reasonable and adequate search for non-intelligence records pertaining to her. (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 11, at 1.) Willis has filed a one-paragraph document opposing NSA's motion (*see* Mot. Opposing Summ. J. ("Pl.'s Opp'n"), ECF No. 13, at 1), and she has also filed a separate one-paragraph motion asking this Court to compel NSA to prepare a *Vaughn* index (*see* Mot. to Compel Preparation of a Vaughn Index ("Mot. to Compel"), ECF No. 14, at 1). On March 29, 2019, this Court issued an order that **GRANTED** NSA's motion for summary judgment and **DENIED** Willis's motion seeking to compel preparation of a *Vaughn* index. (*See* ECF No. 17, at 1.) This Memorandum Opinion explains the reasons for that Order. As discussed fully below, this Court finds that NSA acted properly when it refused to confirm or deny the existence of intelligence records pertaining to Willis, and that NSA conducted a reasonable and adequate search for non-intelligence records responsive to Willis's request. This Court further finds that Willis is not entitled to a *Vaughn* index under the circumstances presented in this case.

## I.  BACKGROUND

### A.  Willis's Privacy Act/FOIA Request

On July 17, 2017, Willis sent a letter to NSA in which she made "a request for personal records under the Privacy Act[,]" and in particular, records that are related to (1) Willis's employment at a cancer research center, (2) an MCAT exam that Willis took in 2015, (3) a period of hospitalization that Willis endured in 2015, and (4) prior FOIA litigation involving Willis.  (PA/FOIA Request at 18; *see also id.* at 22.)  NSA initially "interpreted [this] request as being for NSA intelligence on [Willis]" under both the FOIA and the Privacy Act, and informed Willis that it is the agency's policy not "to confirm or deny the existence of intelligence records on any and all individuals who request them."  (PA/FOIA Resp. at 39.)  NSA cited FOIA Exemptions 1 and 3, as well as a parallel Privacy Act exemption (*see id.* at 39–40), and explained its underlying rationale as follows:

> To respond to your request, NSA would have to confirm or deny the existence of intelligence records on you.  Were we to do so in your case, we would have to do so for every other requester.  This would enable, for example, a terrorist or other adversary to file a FOIA request with us in order to determine whether he or she was under surveillance or had evaded it.  This in turn would allow that individual to better assess whether they could successfully act to damage the national security of the United States.  For such reasons, we can neither confirm nor deny the existence or non-existence of the records you requested.

(*Id.* at 39.)

On August 16, 2017, Willis appealed NSA's response to her request.  (*See* Ex. D to Thompson Decl., ECF No. 11-3 at 51-59 ("PA/FOIA Appeal"), at 51.)  NSA then reconsidered Willis's request, construing it as one for "NSA records regarding

personnel or affiliates." (*See* Thompson Decl. ¶ 34.) Based on this construction, NSA reprocessed the request by searching affiliate-related Privacy Act systems of record (*see id.* ¶¶ 15–16, 34; *see also* Ex. E to Thompson Decl., ECF No. 11-3 at 61-62 ("Appeal Decision"), at 61). Specifically, the "NSA tasked its Security and Counterintelligence group . . . to search its affiliate-related PA systems of record for any records containing Ms. Willis's name and social security number." (Thompson Decl. ¶ 15.) NSA records showed that Willis had "never been affiliated with this Agency"; therefore, "no PA records on [Willis] were located." (Appeal Decision at 61.) In addition, NSA also searched its FOIA records for information regarding the FOIA litigation that Willis specified in her request, but did not locate any responsive non-intelligence records. (*See* Thompson Decl. ¶ 15.) With respect to intelligence records, NSA affirmed its initial refusal to confirm or deny the existence of responsive records. (*See* Appeal Decision at 61.)

### B.    Procedural History

On September 26, 2017, Willis filed the instant complaint, which is 35 pages in length and to which she attaches 229 pages of exhibits; the complaint itself alleges one claim under both the FOIA and the Privacy Act. (*See* Compl.) Willis explains that the impetus behind her PA/FOIA Request is her concern that "she may have been misrepresented as having been affiliated with and/or having been under contract with the United States government minimally during 2014 and 2015" (*id.* ¶ 3), and that she seeks the records from NSA "for purposes of correcting errors in an expedited manner" (*id.*, Jurisdiction and Parties, ¶ 4).[2]

---

[2]  Willis's complaint contends that she "has experienced a vast array of electronic errors from 2015-present[,] too numerous to seem coincidental[,]" (Compl. ¶ 7), and that these circumstances "strongly

With respect to NSA's response to her request, Willis claims that NSA's search for responsive records was inadequate because the agency limited its search to one system of records, rather than search "ALL records in ALL responsive systems." (*Id.*, Count I, ¶ 4.) She also maintains that there is no legal basis for NSA to refuse to confirm or deny the existence of responsive records without conducting any search, asserting that "[s]hould records on [an] individual exist within an agency to which a FOIA/PA request was sent, such an agency is required to either provide exemptions and/or release properly redacted documents[.]" (*Id.*, Count I, ¶ 7.) As relief, Willis asks this Court to order NSA to search all its systems of records for all information pertaining to her, including "any and all surveillance of the plaintiff over the course of her lifetime[.]" (*Id.*, Count I, ¶ 11(b).) For any records that the agency withholds or redacts, Willis also requests that the agency be ordered to provide her with a *Vaughn* index. (*See id.*, Count I, ¶ 11(c).)

After Willis filed this lawsuit, NSA staff "reviewed the record in this case and noticed that its September 12, 2017 appeal response" was incomplete. (Thompson Decl. ¶ 16.) Specifically, the "affiliate-related system of records did not contain as many types of records" as indicated in the appeal response; the "system only contained personnel, security and partial training records." (*Id.*) "As a result, . . . NSA tasked two additional organizations, Occupational Health Services and HR External Recruitment and Hiring, to search their systems of records containing medical and

---

indicate[] that [NSA] has information pertaining" to her (*id.*). The complaint then proceeds to describe these "electronic errors" (*id.*)—they include, *inter alia*, problems Willis experienced contacting Apple customer service regarding her iPhone (*see* Compl. ¶ 7(a)); issues with files in her computer (*see id.* ¶ 7(b)); unknown activity on her Gmail account (*see id.* ¶ 7(c)); discrepancies in her medical records (*see id.* ¶ 7(e)); errors in her cell phone call logs (*see id.* ¶ 7(h); issues with her health insurance electronic statements (*see id.* ¶ 7(q)); and problems with electronic payments to a hospital (*see id.* ¶ 7(r)).

applicant records in order to complete a fulsome search for Plaintiff's PA records."

(*Id.*)  These searches did not locate any responsive records.  (*See id.*)

NSA filed the motion for summary judgment that is the subject of this

Memorandum Opinion on March 23, 2018, and attached to it a declaration from Steven

E. Thompson, an NSA employee who oversees the agency's FOIA/PA Office.  (*See*

Def.'s Mot.; Thompson Decl.)  In its motion, NSA argues that it properly invoked FOIA

Exemptions 1 and 3, along with § 552a(k)(1) of the Privacy Act, to refuse to confirm or

deny the existence of any intelligence records regarding Willis, because doing so would

reveal information that can be withheld pursuant to those statutory exemptions.  (*See*

Mem. in Supp. of Def.'s Mot., ECF No. 11-1, at 13–19.)  The agency further maintains

that it conducted a reasonable search for non-intelligence records responsive to Willis's

request.  (*See id.* at 19–22.)

Willis's opposition to NSA's motion, which was filed on May 14, 2018, states in

its entirety:

> Plaintiff, CALLEN WILLIS [self, non-attorney], opposes the
> NATIONAL SECURITY AGENCY'S (represented by Mr.
> Daniel Schaefer) motion for summary judgment. Plaintiff,
> CALLEN WILLIS [self, non-attorney] has a right to a Vaughn
> Index.  There is no legal basis for denying this right.

(Pl.'s Opp'n at 1 (brackets in original).)  Willis also filed a separate motion asking this

Court to require NSA to produce a *Vaughn* index for every record it has withheld as

exempt.  (*See* Mot. to Compel at 1.)  In response to Willis's motion seeking a *Vaughn*

index, NSA argues that it is not obliged to create a *Vaughn* index in cases where it

refuses to confirm or deny the existence of records.  (Reply in Supp. of Def.'s Mot.&

Resp. in Opp'n to Pl.'s Mot. to Compel, ECF No. 16, at 2.)  The parties' motions are now ripe for this Court's consideration.

## II.    LEGAL STANDARDS

### A.    The FOIA And The Privacy Act

The FOIA "was enacted to facilitate public access to Government documents[,]" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citations omitted), and as relevant here, it requires agencies to make records available upon request, 5 U.S.C. § 552(a)(3)(A) (requiring that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person").  "[T]he FOIA also contains nine exemptions—*i.e.*, specified circumstances under which disclosure is not required."  *Neuman v. United States*, 70 F. Supp. 3d 416, 420–21 (D.D.C. 2014) (citing 5 U.S.C. § 552(b)).  These exemptions must be construed narrowly, *see Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976), and the government bears the burden of demonstrating that any withheld information falls within the claimed exemptions, *see Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000).  Two FOIA exemptions are at issue in this case:  Exemption 1, which authorizes agencies to withhold agencies records that are "properly classified" pursuant to an Executive order, 5 U.S.C. § 552(b)(1), and Exemption 3, which protects information "specifically exempted from disclosure by statute[,]" 5 U.S.C. § 552(b)(3).

"The Privacy Act governs federal agencies' acquisition, maintenance, use, and disclosure of information concerning individuals[,]" *Jones v. Exec. Office of President*,

167 F. Supp. 2d 10, 13 (D.D.C. 2001), and it "provides an individual with access to government records that pertain to her which are contained in a system of records[.]" *Augustus v. McHugh*, 825 F. Supp. 2d 245, 255 (D.D.C. 2011) (explaining that the Privacy Act "allows the individual to review and have a copy made of all or any portion of the records" (citing 5 U.S.C. § 552a(d))).  Like the FOIA, the Privacy Act contains certain exemptions and exceptions, including one that expressly incorporates FOIA Exemption 1.  *See* 5 U.S.C. § 552a(k)(1).

### B.    Summary Judgment In The Context of The Privacy Act And The FOIA

Cases arising from an agency's response to a request for records "typically and appropriately are decided on motions for summary judgment."  *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if the pleadings, disclosure materials on file, and affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Judicial Watch*, 25 F. Supp. 3d at 136 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  In the FOIA/Privacy Act context, a district court conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its statutory obligations.  *See In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008).  Because the court must analyze all underlying facts and inferences in the light most favorable to the requester, *see Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), it is appropriate to enter summary judgment for an

agency only if the agency proves that it has "fully discharged its obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996); *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016) (finding that "a motion for summary judgment cannot be deemed 'conceded' for want of opposition").

"An agency seeking summary judgment in a case challenging its response to a request for records, whether that request is made under the Privacy Act or FOIA, must show that it conducted 'a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable.'" *Williams v. Fanning*, 63 F. Supp. 3d 88, 93 (D.D.C. 2014) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). A court may grant summary judgment to the agency based on information provided in "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation marks, citation, and brackets omitted); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1999) (highlighting the "reasonableness" standard). Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith[,]" and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defs. of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans. Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001)).

### C. "*Glomar* Responses" To Records Requests

In addition to producing requested records or withholding requested records under an established FOIA or Privacy Act exemption, an agency can also issue what has come to be known as a "*Glomar* response" when a requester seeks identifiable records from the agency. *See, e.g.*, *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007); *see also ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013) (noting that the court reviews an agency's decision to provide a *Glomar* response *de novo*).[3] "A *Glomar* response permits an agency to 'refuse to confirm the existence of records'" when providing a substantive response "'would cause harm cognizable under'" under an exemption to either the FOIA or the Privacy Act. *Casey v. FBI*, 302 F. Supp. 3d 209, 212 (D.D.C. 2018) (quoting *Wolf*, 473 F.3d at 374).

To justify a *Glomar* response, "the Government must show that the mere fact of whether it has (or does not have) relevant records is protected from disclosure under an exemption." *Kalu v. IRS*, 159 F. Supp. 3d 16, 21 (D.D.C. 2016) (citing *Wolf*, 473 F.3d at 374). And where "the information requested 'implicat[es] national security, a uniquely executive purview[,]'" *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (brackets in original) (quoting *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926–27 (D.C. Cir. 2003)), courts must "exercise[] caution" when evaluating the government's showing in this regard, *id.* A plaintiff "can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the

---

[3] "Glomar" responses are "named for the *Hughes Glomar Explorer*, a ship used in a classified Central Intelligence Agency project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'" *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1171 (D.C. Cir. 2011) (quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981)).

existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect." *ACLU*, 710 F.3d at 427.

### D.    Application Of The Governing Legal Standards To Pro Se Parties

Finally, this Court must be mindful of the fact that Willis is proceeding in this matter pro se.  The pleadings of pro se parties must be "liberally construed[,]" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).  Nonetheless, it is equally clear that "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. U.A.E.*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009).  When faced with a motion for summary judgment, a pro se plaintiff, just like a represented party, must demonstrate that there is a genuine issue of material fact for trial or that there is no such issue and the undisputed facts require judgment in the plaintiff's favor. *See Grimes v. Dist. of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).  Moreover, a pro se plaintiff is obliged to comply with a court's rules regarding responses to statements of material fact and the need to identify record evidence that establishes each element of her claim for relief. *See id.* (explaining that a pro se plaintiff "cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with evidence").

## III.    ANALYSIS

Willis's submission in opposition to NSA's motion for summary judgment offers no substantive response to the agency's arguments that it is entitled to summary

judgment. (*See* Sec. I.B, *supra*.) As such, this Court accepts as true the unrebutted facts contained in NSA's declaration and the agency's statement of material facts regarding its responses to Willis's records request. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (holding that, where a responding party does not file a statement of material facts in dispute, "the district court is to deem as admitted the moving party's facts"). Consistent with D.C. Circuit precedent, this Court has proceeded to analyze whether or not NSA is entitled to summary judgment based on these undisputed facts and the governing law. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016).

For the reasons explained fully below, the Court has concluded that NSA properly refused to confirm or deny the existence of any intelligence records responsive to Willis's FOIA/Privacy Act request, and that the agency satisfied its duty to conduct a reasonable search for non-intelligence records responsive to Willis's request. The Court has also determined that Willis is not entitled to a *Vaughn* index. Therefore, the Court has awarded NSA summary judgment with respect to Willis's complaint.

## A. NSA's *Glomar* Response Did Not Violate The FOIA Or The Privacy Act

As explained above, because NSA construed Willis's request as one seeking NSA intelligence records *about herself*, the agency issued a standard *Glomar* response, in which it refused to confirm or deny the existence of any responsive records based on FOIA Exemptions 1 and 3, as well as section 552a(k)(1) of Title 5 of the U.S. Code. (*See* PA/FOIA Resp. at 39–40.)[4] Consequently, this Court must determine whether FOIA Exemptions 1 and 3, and/or the Privacy Act, permitted NSA to forego confirming

---

[4] Section 552a(k)(1) is a section of the Privacy Act that expressly incorporates FOIA Exemption 1.

or denying the existence of any intelligence files pertaining to Willis, because doing so would reveal information that can properly be withheld. *See, e.g.*, *Wolf*, 473 F.3d at 374 (explaining that an agency my provide a *Glomar* response to a FOIA request "where to answer the FOIA inquiry would cause harm cognizable under a[ ] FOIA exemption." (citation omitted)); *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (same). This Court readily concludes that NSA's response to Willis's request was proper, as explained below.

       1.      <u>FOIA Exemption 1 And Section 552a(k)(1) Permit NSA To Issue</u> <u>*Glomar* Reponses Regarding Requests For Records Pertaining To</u> <u>Individuals</u>

FOIA Exemption 1 (and 5 U.S.C. § 552a(k)(1) by incorporation) protects information that is "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). "Thus, an agency attempting to withhold information under Exemption 1 must show that it 'complies with classification procedures established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification.'" *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 296 F. Supp. 3d 109, 124 (D.D.C. 2017) (quoting *Mobley v. DOJ*, 870 F. Supp. 2d 61, 66 (D.D.C. 2012)) (alteration omitted).

NSA relies on Executive Order 13,526, Classified National Security Information (Dec. 29, 2009), *see* 3 C.F.R. § 298, which delineates four conditions that must be met for information to be deemed "classified" properly, one of which is that "the information falls within one or more of the categories of information listed in section

1.4 of this order[.]"  Exec. Order 13,526 of Dec. 29, 2009 § 1.1(3), Classified National

Security Information, 75 Fed. Reg. 705, 707 (Jan. 5, 2010) ("E.O. 13,526").[5]  In section

1.4, the Executive order further references eight specific categories of information that

"could reasonably be expected to cause identifiable or describable damage to the

national security[,]" including information pertaining to "intelligence activities

(including covert action) [and] intelligence sources or methods[.]" E.O. 13,526 § 1.4(c).

"Thus, if information that is responsive to a FOIA request fits into any of the eight

categories, and if an original classifying authority has designated the information

classified based on that authority's determination that the unauthorized disclosure of the

information reasonably could be expected to result in damage to the national security,

the information has properly been deemed 'classified' and the government can invoke

Exemption 1 to withhold the information from disclosure under the FOIA." *Elec.*

*Privacy Info. Ctr.*, 296 F. Supp. 3d at 124–25.

    Here, NSA's declarant, Steven E. Thompson, has stated that he is a TOP

SECRET original classification authority (Thompson Decl. ¶ 2), and also that

acknowledging "the existence or nonexistence of operational intelligence information"

regarding any individual—including Willis—would reveal information in one of E.O.

---

[5]  The Executive order also requires that:

> (1) an original classification authority is classifying the information;

> (2) the information is owned by, produced by or for, or is under the control of
> the United States Government; . . . and

> (4) the original classification authority determines that the unauthorized disclosure of the
> information reasonably could be expected to result in damage to the national
> security, which includes defense against transnational terrorism, and the original
> classification authority is able to identify or describe the damage.

E.O. 13,526.

13,526's eight categories; namely, "intelligence activities (including covert action), intelligence sources and methods, or cryptology" (*id.* ¶ 20). This is because, according to Thompson, if the NSA were to "confirm or deny publicly in any case whether or not it has such records," the agency would thereby "reveal whether or not NSA engaged in certain, or any, intelligence activities, and/or did or did not target individual communications for collection." (*Id.* ¶ 17.) [6]

Thompson further declares that "a positive or negative response" to a FOIA request seeking confirmation of the existence of records regarding individuals "reasonably could be expected to cause exceptionally grave damage to national security" because "it would reveal NSA capabilities, activities, and intelligence priorities, which in turn could inhibit [signals intelligence] collection and affect NSA's ability to counter threats to the national security of the United States." (*Id.* ¶ 21.) Willis is deemed to have conceded these facts by not responding to them in her opposition papers, *see Jackson*, 101 F.3d at 154, and NSA's representations are the only factual predicate that the invocation of Exemption 1 or 5 U.S.C. § 552a(k)(1) requires, *see Elec. Privacy Info. Ctr.*, 296 F. Supp. 3d at 124–25.

---

[6] Thompson provides an example of the threat that such a revelation poses when it is considered collectively with the agency's responses to other FOIA requests (and not in isolation (*see* Thompson Decl. ¶ 23)):

> For example, if NSA were to admit publicly in response to a FOIA request that no information about Person X or Y exists, but in response to a separate FOIA request about Person Z state[s] only that no response could be made, this would give rise to the inference that Person Z is or has been a target. Over time, the accumulation of these inferences would disclose the targets and capabilities, and therefore the sources and methods, of NSA's [signals intelligence] activities and functions, and inform our adversaries of the degree to which NSA is aware of some of their operatives or can successfully exploit particular communications.

(*Id*. ¶ 22.) For this reason, NSA consistently issues *Glomar* responses "in all cases where the existence or nonexistence of records responsive to a FOIA request is a classified fact[.]" (*Id*. ¶ 24.)

In short, like many other courts that have considered NSA's responses to similar first person requests for records, this Court concludes that NSA's *Glomar* response to Willis's records request is logically and plausibly rooted in national security concerns regarding the revelation of classified information (i.e., NSA's intelligence collection efforts, when FOIA requests such as these are viewed collectively) and, therefore, to the extent that Willis's request sought NSA intelligence information about herself, NSA's response does not violate the FOIA or the Privacy Act. *See, e.g.*, *People for the Am. Way Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 462 F. Supp. 2d 21, 31 (D.D.C. 2006) (holding that NSA properly issued a *Glomar* response to a request for records related to surveillance of the plaintiff because confirming that a person's activities are not of intelligence interest or that NSA could not collect intelligence information on activities "would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods" (internal quotation marks omitted)); *see also Carter v. Nat'l Sec. Agency*, 962 F. Supp. 2d 130, 140 (D.D.C. 2013) (finding that agency properly issued a *Glomar* response to first-person request for records, based on Exemptions 1 and 3), *aff'd*, No. 13-5322, 2014 WL 2178708 (D.C. Cir. Apr. 23, 2014).

      2.        <u>FOIA Exemption 3 Permits NSA To Issue *Glomar* Reponses Regarding Requests For Records Pertaining To Individuals</u>

FOIA's Exemption 3 provides an independent and alternative justification for the NSA's *Glomar* response to Willis's request for intelligence records regarding herself. Exemption 3 permits an agency to withhold records in response to a FOIA request where a statute "specifically exempt[s]" the requested information from disclosure, so long as that statute either "requires that the matters be withheld from the public in such

a manner as to leave no discretion on the issue[,]" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]" 5 U.S.C. § 552(b)(3).  Because these two conditions are listed in the disjunctive, the statute at issue "need satisfy only one of them to qualify under Exemption 3." *Gov't Accountability Project v. Food & Drug Admin.*, 206 F. Supp. 3d 420, 428 (D.D.C. 2016) (citation omitted). "However, notably, [b]efore a court inquires into whether any of the [two statutory] conditions [for withholding information] are met . . . it must first determine whether the statute is a withholding statute at all by deciding whether it satisfies the threshold requirement that it specifically exempt matters from disclosure." *Elec. Privacy Info. Ctr.*, 296 F. Supp. 3d at 120 (alterations in original) (internal quotation marks and citation omitted).[7]

Here, NSA invokes three separate statutes as justifying its Exemption 3 withholdings.  (*See* Def.'s Mem. at 16–18.)  First, it points to Section 6 of the National Security Act of 1959, which provides in relevant part that "nothing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof[.]"  50 U.S.C. § 3605(a).  NSA also relies on 18 U.S.C. § 698, which makes it a federal crime to disclose "the communication intelligence activities of the United States or any foreign government[,] or obtained by the processes of

---

[7]  In determining whether a statute qualifies as an Exemption 3 withholding statute, a court must first "look to the language of the statute on its face[.]"  *Gov't Accountability Project*, 206 F. Supp. 3d at 429 (internal quotation marks, citation, and alteration omitted).  "In other words, a statute that is claimed to qualify as an Exemption 3 withholding statute must, on its face, exempt matters from disclosure." *Elec. Privacy Info. Ctr.*, 296 F. Supp. 3d at 120 (internal quotation marks and citation omitted).  If the statute does contain the requisite exemption language, "the court next determines whether the statute satisfies either of the two statutory disjunctive conditions for withholding the responsive information." *Id.* (citations omitted).

communication intelligence from the communications of any foreign government[.]"  18 U.S.C. § 798(a)(3)–(4).  Third and finally, NSA points to Section 102A(i)(1) of the National Security Act of 1947, which requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1).

It is well established that each of these statutes qualifies as an Exemption 3 withholding statute, because each specifically exempts particular material from disclosure and satisfies one aspect of Exemption 3's disjunctive tests.  *See, e.g.*, *DiBacco v. U.S. Army*, 795 F.3d 178, 199 (D.C. Cir. 2015) (noting that Section 102A(i)(1) is an Exemption 3 withholding statute that mandates withholding of intelligence sources and methods); *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009) (finding that 18 U.S.C. § 798 is an Exemption 3 withholding statute that mandates withholding of the covered material); *Hayden v. NSA*, 608 F.2d 1381, 1389–90 (D.C. Cir. 1979) (explaining that Section 6 is an Exemption 3 withholding statute that specifies information to be withheld).  Thus, the question this Court must address is whether these statutes cover the material at issue in this suit.

Thompson has stated that "[t]he information at issue here falls squarely within the scope of several statutes." (Thompson Decl. ¶ 28.)  Specifically, the act of disclosing whether or not any intelligence files pertaining to Willis exist purportedly would reveal "information about NSA's [signals intelligence] efforts [that] directly relates to the Agency's core functions and activities and to intelligence sources and methods[,]" (Thompson Decl. ¶ 29), and thus would implicate the proscriptions of Section 6 of the National Security Act.  Thompson further states that confirmation of

the existence of such files would reveal classified information "concerning the communications activities of the United States" in violation of 18 U.S.C. § 798. (*See id.* ¶ 30.) Finally, Thompson explains that indicating whether NSA has any intelligence files on Willis would reveal NSA intelligence sources and methods in contravention of Section 102A(i)(1) of the National Security Act of 1947. (*See id.* ¶ 31.)

Thompson avers that "Congress has enacted these three statutes to protect the fragile nature of NSA's [signal intelligence] efforts[,]" and that, for the reasons explained above, these "activities and functions, and [NSA's] intelligence sources and methods, would be revealed if NSA confirmed or denied the existence of information responsive to [Willis's] FOIA request." (*Id.* ¶ 32; *see also id.* ¶¶ 22–24 (explaining that, unless NSA invokes the *Glomar* response consistently—both in cases in which such records exist and those in which records do not—our adversaries could discover and exploit inferences regarding NSA's targets and intelligence-gathering capabilities).) Willis has offered no response to these assertions, and this Court finds them to be both logical and plausible. *See Wolf*, 473 F.3d at 374–75; *see also Jackson*, 101 F.3d at 154. Therefore, the Court accepts the agency's statements in this regard, and it finds that NSA has established that the agency's Exemption 3 *Glomar* response does not violate the FOIA or the Privacy Act.

### B.     NSA Conducted An Adequate Search For Non-Intelligence Records

As noted above, in addition to construing Willis's request as one for intelligence records about herself, NSA also construed Willis's request for "personal records under the Privacy Act" (FOIA/PA Request at 18) as one seeking "[Privacy Act] records containing information about her" (*see* Thompson Decl. ¶ 15), and thus the agency searched "its affiliate-related PA systems of record for any records containing Ms.

Willis's name and social security number" (*id.* ¶ 15; *see also id.* (explaining that "NSA tasked its Security and Counterintelligence group" with search responsibilities because that group "maintains records of all NSA affiliates and personnel who have visited NSA")). NSA also searched its FOIA records for information regarding Willis's FOIA request to, and litigation involving, the CIA. (*See* FOIA/PA Request at 18; Thompson Decl. ¶ 15.) Neither of these searches revealed any responsive records. (*See* Appeal Decision at 61.) NSA then "tasked two additional organizations, Occupational Health Services and HR External Recruitment and Hiring, to search their systems of records containing medical and applicant records[,]" and again these searches did not unearth any documents responsive to Willis's request. (Thompson Decl. ¶ 15.) Willis has not refuted any of these factual assertions. (*See* Pl.'s Opp'n.)

An agency in receipt of a request under the FOIA or the Privacy Act must construe that request liberally, *see Truitt v. Dep't of State*, 897 F.2d 540, 544–45 (D.C. Cir. 1990) (citing *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), and "the touchstone when evaluating the adequacy of an agency's search for records in response to a FOIA request is reasonableness." *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 125 (D.D.C. 2018); *see also Physicians for Human Rights v. U.S. Dep' t of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("[I]n responding to a FOIA request, an agency is only held to a standard of reasonableness; as long as this standard is met, a court need not quibble over every perceived inadequacy in an agency's response, however slight."). Based on the uncontested details laid out in the declaration that NSA has submitted, this Court easily finds that NSA liberally and reasonably construed Willis's records request, and that it conducted a

reasonable search of its Privacy Act files and FOIA litigation files for responsive records. As such, the agency is entitled to summary judgment with respect to its "no records" response for non-intelligence files responsive to Willis's request.

## C. Willis Is Not Entitled To A *Vaughn* Index

Finally, this Court turns to Willis's repeated requests for a *Vaughn* index. (*See* Pl.'s Mot. to Compel Preparation of a *Vaughn* Index, ECF No. 4; Pl.'s Mot. to Compel Preparation of a *Vaughn* Index, ECF No. 7; Mot. to Compel.) A *Vaughn* index is a submission from an agency in a FOIA case that provides details regarding an agency's FOIA withholdings "to enable the Court to determine whether documents properly were withheld." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009) (citations omitted). Moreover, an obligation to create a *Vaughn* index only attaches after an agency searches for documents and withholds documents or portions thereof based on particular FOIA exemptions. *Vaughn v. Rosen*, 484 F.3d 820, 827 (D.C. Cir. 1973).

In cases such as this one—i.e., where a *Glomar* response is appropriate—"the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents[,]" *Lindsey v. FBI*, 271 F. Supp. 3d 1, 4 (D.D.C. 2017) (alteration, internal quotation marks, and citation omitted), and because the agency has not searched for any information, there is nothing to index. Likewise, there is nothing for NSA to index with respect to Willis's request for non-intelligence files under the Privacy Act, because NSA's searches did not locate any responsive documents, and the agency is therefore not withholding any records. (*See* Thompson Decl. ¶ 34.)

## IV. CONCLUSION

Based on NSA's submission, this Court concluded that the agency fulfilled its obligations under the FOIA and the Privacy Act in responding to Willis's request. Accordingly, as stated in the Order issued on March 29, 2019, NSA's motion for summary judgment was **GRANTED**, and Willis's motion to compel a *Vaughn* index was **DENIED**. That Order is now a final, appealable order.

DATE: April 30, 2019

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge